**C**

**Section 10**

## CIVIL DISTRICT COURT OF ORLEANS PARISH ORLEANS PARISH

### STATE OF LOUISIANA

NO.                                                                    DIVISION

### LIBERTY STREET UPT, LLC AND 1008 THIRD STREET, LLC,

### VERSUS

### HUDSON EXCESS INSURANCE COMPANY

FILED: _____               DEPUTY CLERK _____

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiffs Liberty Street UPT,

LLC and 1008 Third Street, LLC,, who files their Petition for Damages against Hudson Excess

Insurance Company, upon information and belief he respectfully represents the following:

### PARTIES

1.

Made Plaintiffs herein is Liberty Street UPT, LLC, a domestic Limited Liability Company,

registered in and doing business in Orleans Parish, Louisiana.

2.

Made Plaintiffs herein is 1008 Third Street, LLC, a domestic Limited Liability Company,

registered in and doing business in Orleans Parish, Louisiana.

3.

Made defendant herein is Hudson Excess Insurance Company ("Hudson") upon

information and belief, a foreign insurance company authorized to do and is doing busines in the

State of Louisiana, upon information and belief, a foreign insurance company authorized to do and

is doing business in the State of Louisiana, which may be served through its Registered Agent for

Service of Process, the C/O Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge,

La 70809.

### JURISDICTION AND VENUE

4.

Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil

Procedure, Article 2.

**VERIFIED**

Jovan Gibson

**EXHIBIT A**

2023 AUG 23  P 01:02

C

**Section 10**

5.

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure, Article 76.

## RELEVANT FACTS

6.

At all times relevant hereto, Plaintiffs owned the properties located at:

4717-4719 S. Liberty Street New Orleans, LA

4721-4723 S. Liberty Street New Orleans, LA

4725-4727 S. Liberty Street New Orleans, LA

4721A-4719A S. Liberty Street New Orleans, LA

4725A-4727A S. Liberty Street, and New Orleans, LA; and

1008-1010 Third Street New Orleans, LA

Collectively, the "Properties".

7.

At all times relevant hereto, defendant provided a policy of insurance, number HBD10047708 (the "Policy"), to which covered the Properties against perils including hurricanes.

8.

On August 29, 2021, the properties received significant damage from a Hurricane.

9.

Plaintiffs promptly reported the loss to Hudson.

10.

On November 15, 2021, Hudson inspected the properties, identifying $168,213.63 in damage. At the point of making this determination, Hudson concluded their inspection and made a determination that coverage to the properties did exist.

11.

Plaintiff requested, in accordance with the terms of the policy, appraisal of the value of the loss and named their appraiser. Hudson responded accepting appraisal and named their appraiser. On January 5, 2023, the appraisal panel issued an award in the amount of $694,825.68. To date the Defendant has not paid all amounts due under the policy.

2

12.

Plaintiffs could not repair the Properties without insurance proceeds, and Plaintiffs promptly put defendant on notice of its deficient claims handling.

13.

To date, defendant has not adequately compensated Plaintiffs for their substantial and covered losses.

14.

Defendant's failure to comply with the terms of its own Policy caused and continues to cause significant delay to the repair of Plaintiffs' properties.

15.

Upon information and belief, defendant purposely and/or negligently failed to timely tender proceeds due Plaintiffs after having received satisfactory proof of loss.

16.

Upon information and belief, defendant purposely and/or negligently misrepresented to Plaintiffs the terms and conditions of the Policy.

17.

Upon information and belief, defendant conducted the investigation and claims handling for Plaintiffs' claim in violations of the defendant's duty of good faith and fair dealings.

18.

Plaintiffs has incurred and/or will incur additional expenses in making repairs because defendant failed to timely compensate them for their losses under the Policy.

19.

Plaintiffs has incurred and/or will incur professional expenses, including attorney's fees, to determine that defendant wrongfully failed to adequately/timely pay on their claims under the Policy.

**C**

**Section 10**

## CAUSES OF ACTION

### A. Breach of the Insurance Contract

20.

Plaintiffs realleges and re-avers the allegations contained in paragraphs 1-19, above, as if restated herein.

21.

Despite having adequate proof of loss, defendant failed to timely tender adequate funds under the Policy.

22.

An insurance contract, the Policy, exists between Plaintiffs and defendant.

23.

By purposely and/or negligently misrepresenting to Plaintiffs the terms and conditions of the relevant Policy, defendant breached the insurance contract.

24.

By not conducting the investigation and claims handling within the defendant's duty of good faith and fair dealings, defendant breached the insurance contract.

25.

By failing to adequately compensate Plaintiffs for damages to the Properties, as required by the Policy, defendant breached the insurance contract.

26.

By failing to adequately compensate Plaintiffs for their damaged personal properties, as required by the Policy, defendant breached the insurance contract.

27.

Plaintiffs has suffered and continues to suffer damages due to these breaches of the insurance contract.

### B. Breach Of Duty Of Good Faith And Fair Dealings

28.

Plaintiffs realleges and re-avers the allegations contained in Paragraphs 1-27, above, as if restated herein.

4

E-Filed

29.

The actions and/or inactions of defendant in failing to adequately compensate Plaintiffs for the covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making defendant liable for statutory penalties for violations of the defendant's duty of good faith and fair dealings.

30.

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

31.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered a violation of an insurer's duty of good faith and fair dealings and is in violation of La. R.S. § 22:1973.

32.

La. R.S. § 22:1892 imposes penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

33.

Defendant is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Plaintiffs adequate payment in connection with her damages, despite having received satisfactory proof of loss following its own inspection(s) of the Properties and following receipt of independent proofs of loss from Plaintiffs.

34.

Defendant's misrepresentation of the terms of the Policy violates their duty of good faith and fair dealings.

35.

Defendant's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claim(s) violates their duty of good faith and fair dealings.

36.

Defendant's handling of Plaintiffs' claim violates their duty of good faith and fair dealings.

## DAMAGES

37.

Plaintiffs realleges and re-avers the allegations contained in Paragraphs 1-36, above, as if restated herein.

38.

As a result of defendant's breaches of contract, violations of the defendant's duty of good faith and fair dealings, and other bad acts, Plaintiffs has incurred the following, non-exclusive damages:

a. Diminution of the value of the Properties;

b. Actual repair costs;

c. Lost/damaged contents;

d. Any covered additional living expenses;

e. Embarrassment and loss of enjoyment of the use of his home;

f. Mental anguish;

g. Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and

h. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

39.

WHEREFORE, Plaintiffs, Liberty Street UPT, LLC and 1008 Third Street, LLC, prays that:

1) Defendant, Hudson Excess Insurance Company be served with a copy of this Petition and be duly cited to appear and answer the allegations contained therein,

2) After expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Plaintiffs Liberty Street UPT, LLC and 1008 Third Street, LLC,, and against defendant, Hudson Excess Insurance Company, in an amount that will fully and fairly compensate Plaintiffs pursuant to the evidence and in accordance with the

6

**C**

**Section 10**

law, all sums with legal interest thereon, from the date of judicial demand until fully

paid, for all costs of these proceedings, and for all general and equitable relief.

**GODBEY GIARDIAN LAW GROUP**

AARON GODBEY (#38534)
Michael Giardina (#39192)
Dante Cortello (#39093)
Devlan Melancon (#39280)
1381 Fremaux Avenue,
Slidell, La 70458
Telephone: (985) 590-4650
Email: Aaron@g-glawgroup.com
*Attorneys for Liberty Street UPT, LLC and*
*1008 Third Street, LLC*

**PLEASE SERVE:**
Hudson Excess Insurance Company
C/O Louisiana Secretary of State,
8585 Archives Avenue,
Baton Rouge, La 70809

IN RE: HURRICANE IDA CLAIMS 

2022-03492

SECTION 15

STATE OF LOUISIANA FILED

PARISH OF ORLEANS APR 21 AM 11: 32

CIVIL DISTRICT COURT CIVIL
DISTRICT COURT

DEPUTY CLERK

## CASE MANAGEMENT ORDER
## REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout south Louisiana as a major Category 4 Hurricane.[1] Major Hurricane-force winds, with gusts in excess of 192 mph inflicted catastrophic damage throughout south Louisiana and hurricane force winds impacted this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes the likelihood of a high volume of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the New Orleans community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html
[2] https://www.theadvocate.com/baton_rouge/news/business/article_10bb5488-11d0-11ec-82c3-e3dd67be12ad.html   https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Orleans Parish in Hurricane Ida under FEMA Release No. HQ-21-181. Orleans Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

VERIFIED

04/21/2022

1

applicable to all Hurricane Cases currently pending or hereafter filed in this Court (Civil District Court for the Parish of Orleans).

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Dis covery_Protocols.062121.tzd_0.pdf
[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at* https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.

discovery during the SSP in extraordinary circumstances.[9]

## SECTION 2. PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[10] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[11]

Therefore, **IT IS FURTHER ORDERED** that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include: the author(s) of the document, the recipient(s) of the document (including direct recipients and recipients copied), indication (e.g., with an asterisk) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney), the date of the document, subject line of the document, title of the document, the nature of any privilege(s) asserted, and a description of the document (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable the Special Masters and/or the Court to assess the claim.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and

---

[9] The parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein.
[10] La. C.C.P. art. 1424(A)
[11] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf
United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS E. JOHN LITCHFIELD, ESQ. AND CADE R. COLE, ESQ.** as the Special Masters for Hurricane Cases in the Orleans Civil District Court.

As part of their appointment, the Court mandates that the Special Masters shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.   *The Special Masters*

The Special Masters shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Masters may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.   *Compensation of Appointed Neutrals*

The Special Masters and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour;

B. $280 per case for the Special Masters for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference

means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Masters, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[12] If the claim settles for $25,000 or less, then 100% of the above fees and expenses shall be paid by the defense(s).

**IT IS FURTHER ORDERED** that $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Masters; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Masters.

## III.   Role of Appointed Neutrals

A.   The Special Masters and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Masters, at the Special Masters' discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B.   The Special Masters and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C.   The Special Masters and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D.   The Special Masters may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Masters.

E.   If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

## IV.   Notice to the Special Masters.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Masters, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Masters whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Masters of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Masters shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

---

[12] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

# SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means — whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

### I.  First Stage: Settlement Conference

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 48 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Masters may order any particular modifications in this protocol for specific cases, parties, or attorneys.

### II.  Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Masters written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Masters may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Masters shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Masters (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to

schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Masters may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Masters, including on a weekend day.

### A.   Conduct of Mediation

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Masters the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone or video communication, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

### B.   List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators / appointed neutrals) for the SSP:

The Special Masters and any other person qualified pursuant to R.S. 13:4165(F)(5) that is designated by the Special Masters after consultation with the Court (including those identified in the attached list).

### C.   Neutral Training

The Special Masters may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Masters may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Masters may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Masters may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Masters may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

### III.   Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special

Masters may modify any deadline specified in this Order.

## SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Masters via email at Hurricanefda@colelaw.us and jlitchfield@berriganlaw.net . This deadline may be extended by a Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, a Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's

responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be modified by the Special Masters upon a showing of good cause.

SECTION 7.        CLERK OF COURT AND NOTICE

A Plaintiff filing a Hurricane Case should note on its cover letter, in *ALL CAPS* and *RED FONT*, that the matter is a "HURRICANE CASE". Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.   If a Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Masters the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Masters in the same manner as enrolled counsel via email at Hurricanelda@colelaw.us and jlitchfield@berriganlaw.net.

SECTION 7.        COURT SUPERVISION

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall be applicable to all Hurricane Cases whether then pending or thereafter filed.

SO ORDERED on this ___ day of December, 2021, at New Orleans, Louisiana.

HON. ELLEN M. HAZEUR
District Judge, Division A

HON. RACHAEL JOHNSON
District Judge, Division B

HON. SIDNEY H. CATES IV
District Judge, Division C

HON. NAKISHA ERVIN-KNOTT
District Judge, Division D

9

HON. OMAR MASON
District Judge, Division E

HON. JENNIFER M. MEDLEY
District Judge, Division F

HON. ROBIN M. GIARRUSSO
District Judge, Division G

HON. MONIQUE BARIAL
District Judge, Division H

HON. LORI JUPITER
District Judge, Division I

HON. NICOLE SHEPPARD
District Judge, Division J

HON. BERNADETTE D'SOUZA
Chief Judge and District Judge, Division K

HON. KERN A. REESE
District Judge, Division L

HON. PAULETTE R. IRONS
District Judge, Division M

HON. ETHEL S. JULIEN
District Judge, Division N

10

IN RE: HURRICANE IDA CLAIMS     :     STATE OF LOUISIANA FILED

:     PARISH OF ORLEANS APR 21 AM 11: 32

:     CIVIL DISTRICT COURT CIVIL

DISTRICT COURT

## EXHIBIT "B"

## STIPULATION FOR MEDIATION

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1.     The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2.     No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3.     The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4.     The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5.     The parties shall not:

1

(i)   Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

(ii)   Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

(iii)  Offer into evidence any statements, views or opinions of the appointed neutral.

6.    The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.    Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Masters as many other sessions thereafter as may be helpful in resolving this dispute.

8.    An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.



PLAINTIFF                            COUNSEL FOR PLAINTIFF

Date: _____               Date: _____



DEFENDANT                         COUNSEL FOR DEFENDANT

Date: _____               Date: _____

CONSENTED TO BY:



NEUTRAL APPOINTED BY THE COURT

Date: _____

| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA FILED |
|---|---|---|
| | : | PARISH OF ORLEANS 2021 APR 21  AM 11: 32 |
| | : | CIVIL DISTRICT COURT |
| | | CIVIL DISTRICT COURT |

EXHIBIT "C"

## FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage(s) | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | | | | |
| B. Other Structures | | | | |
| C. Personal Property | | | | |
| D. ALE | | | | |

Claim for Statutory Bad Faith Penalties on Late Prior Payments
Claim for Statutory Bad Faith Penalties on ISC Demand
Claim for Attorney's Fees

Total Claim for Other Damages (describe below):

_____

_____

_____

TOTAL

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

IN RE: HURRICANE IDA CLAIMS  :    STATE OF LOUISIANA FILED

                             :    PARISH OF ORLEANS 2022 APR 21  AM 11: 32

                             :    CIVIL DISTRICT COURT
                                                        CIVIL
                             EXHIBIT "D"                DISTRICT COURT

## FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ |
| OTHER: | _____ | _____ | _____ |
| Other Detail:_____ | | | |
| TOTAL | _____ | _____ | |

4

**ATTORNEY'S NAME:**   Godbey, Aaron L 38534
**AND ADDRESS:**   59118 N. Pearl Drive Unit 1, Slidell, LA 70461

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2023-09031 | DIVISION: C | SECTION: 10 |
|---|---|---|

### LIBERTY STREET UPT LLC ET AL

#### Versus

### HUDSON EXCESS INSURANCE COMPANY

### CITATION

TO:   HUDSON EXCESS INSURANCE COMPANY

C.O LOUISIANA SECRETARY OF STATE , 8585 ARCHIVES AVENUE , BATON ROUGE, LA 70809

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages w/CASE MANAGEMENT ORDER

a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA 70112.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA August 25, 2023**

| | |
|---|---|
| **Clerk's Office, Room 402** | **CHELSEY RICHARD NAPOLEON, Clerk of** |
| **Civil Courts Building** | **The Civil District Court** |
| **421 Loyola Avenue** | **for the Parish of Orleans** |
| **New Orleans, LA 70112** | **State of LA** |
| | **by _____** |
| | **Tyme Jones, Deputy Clerk** |

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ _____ served a copy of the within |
| Petition for Damages w/CASE MANAGEMENT ORDER | Petition for Damages w/CASE MANAGEMENT ORDER |
| ON  HUDSON EXCESS INSURANCE COMPANY | ON  HUDSON EXCESS INSURANCE COMPANY |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said HUDSON EXCESS INSURANCE COMPANY being absent from the domicile at time of said service. |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER / RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ | |
| SERIAL NO.    DEPUTY    PARISH | |

I made service on the named party through the

Office of the Secretary of State on

SEP 15 2023 RECEIVED
DATE

by tendering a copy of this document to:

JULIE BARROW SEP 04 2023

DY. R. GARAFOLA #0577
Deputy Sheriff, Parish of East Baton Rouge, LA
E.B.R. Sheriff's Office

VERIFIED 8/29/23